# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Douglas Smelley, | ) | |
| Plaintiff | ) | |
| | ) | **MDL 2741** |
| v. | ) | |
| | ) | |
| Monsanto Company, | ) | **JURY TRIAL DEMANDED** |
| Defendant | ) | |

## COMPLAINT

Plaintiff, Douglas Smelley, by and through his undersigned attorneys, hereby brings this Complaint for damages against Defendant Monsanto Company, and alleges the following:

### JURISDICTIONAL PREAMBLE

1. Federal diversity jurisdiction in this Court is proper under 28 U.S.C. § 1332 because Plaintiff is a citizen of Alabama. Defendant Monsanto Company place of incorporation is Delaware and Defendant's principal place of business is located in Missouri. The aggregate amount in controversy exceeds $75,000, exclusive of interest and costs.

2. This Court has personal jurisdiction over Monsanto because Monsanto transacts business in California and is a corporation doing business in California and knows or should have known that its Roundup(R) products are sold in the steam or commerce throughout the state of California.

### PARTIES

3. Plaintiff Douglas Smelley is a natural person, is a citizen of the State of Alabama, and is a resident of Tuscaloosa County, Alabama.

1

4.  Mr. Smelley was diagnosed with Non-Hodgkin's Lymphoma in 2012. From 1976-1996,
    Mr. Smelley used Monsanto's Roundup product during the course of his employment in
    the farming and production of chickens beginning in 1976 were he regularly sprayed
    Round Up around the farm and chicken houses.  Douglas Smelley wore protective
    clothing when applying Round Up. The regular use of Round Up continued over a period
    in excess of almost two decades.

5.  Defendant Monsanto Company is a corporation created under the laws of the State of
    Delaware with its headquarters and principal place of business in St. Louis, Missouri.


## FACTUAL ALLEGATIONS

6.  Monsanto was the entity that discovered the herbicidal properties of glyphosate and the
    manufacturer of Roundup, which contains active ingredient glyphosate and surfactant
    POEA, as well as adjuvants and other ingredients. Glyphosate is a herbicide used in a
    wide variety of herbicidal products around the world.

7.  The herbicidal properties of glyphosate were discovered in 1970 by Monsanto chemist
    John Franz. The first glyphosate based herbicide was introduced to the market in the mid-
    1970's under the brand name Roundup(R)[1]. 10 From the outset, Monsanto marketed
    Roundup as a "safe" general purpose herbicide for widespread commercial and consumer
    use.

---

[1] Monsanto, *Backgrounder-History of Monsanto's Glyphosate Herbicides* (June 2005), *supra*.

8. According to WHO, the main ingredient of Monsanto's Roundup- glyphosate - is a probable cause of cancer to humans[2]. In March, 2015, 17 experts from 11 countries met at the International Agency for Research on Cancer (IARC; Lyon, France) to assess the carcinogenicity of the organophosphate pesticides tetrachlorvinphos, parathion, malathion, diazinon, and glyphosate.[3] IARC results found Glyphosate, which is the highest globally produced herbicide by volume, to be a probable cause of cancer in humans. IARC concluded that the cancers most associated with glyphosate exposure are non-Hodgkin lymphoma ("NHL") and other haematopoietic cancers, including lymphocytic lymphoma/chronic lymphocytic leukemia, B-cell lymphoma, and multiple myeloma.[4] The IARC evaluation is significant. It confirms what has been believed for years which is the ingredient glyphosate is toxic to humans.

9. Those most at risk from Monsanto's Roundup active ingredient glyphosate are farm workers and other individuals with workplace exposure to Roundup, such as garden center workers, nursery workers, and landscapers. Agricultural workers are victims of corporate greed. Monsanto assured the public that Roundup was harmless. In order to prove this, Monsanto has championed falsified data and has attacked legitimate studies that revealed Roundup's dangers. Monsanto has led a prolonged campaign of misinformation to convince government agencies, farmers and the general population that Roundup is safe.

10. Plants treated with glyphosate translocate the systemic herbicide to their roots, shoot regions, and fruit, where it interferes with the plant's ability to form aromatic amino acids

---

[2] Guyton, Loomis, et al. Carcinogenicity of Tetrachlorvinphos, Parathion, Malathion, Diazinon, and Glyphosate, VOLUME 16, ISSUE 5, P490-491 (May 2015).
[3] *Id*.
[4] *Id*.

necessary for protein synthesis. Treated plants generally die within two to three days. Because plants absorb glyphosate, it cannot be completely removed by washing or peeling produce or by milling, baking, or brewing grains. For decades, individuals such as the Plaintiff used Roundup unaware and unwarned of the potential health risk associated with and caused by the active ingredient glyphosate.

11. Plaintiff, Douglass Smelley regularly used Roundup spray between the years of 1976-1996. Plaintiff was diagnosed with Non-Hodgkin's lymphoma cancer in 2012. Plaintiff is totally disabled as a result of his cancer. Damage and physical injuries included tumors on his back and loss of hair on his legs. Plaintiff had to undergo chemotherapy and incur related medical expenses as well as other damages as a result of his exposure to Roundup that proximately caused non-Hodgkin's lymphoma.

12. Monsanto's Roundup active ingredient glyphosate is the proximate cause of plaintiff's non-Hodgkin's lymphoma. Plaintiff was regularly exposed to Roundup for two decades and was unaware of the related potential health risk.

**Statute of Limitations**

13. Plaintiff Douglass Smelley had no way of knowing about the risk of serious illness associated with the use of and/or exposure to Roundup(R) and glyphosate during the entire time he was using the product.

14. Within the time period of any applicable statute of limitations, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to Roundup and glyphosate would be injurious to his health.

15. For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.  Douglas Smelley just recently

learned of the connection of using Roundup to his diagnosis of non-Hodgkin's lymphoma.

**Fraudulent Concealment Under The Alabama Manufacturers Liability Doctrine**

16. All applicable statutes of limitations have also been tolled by Defendant's knowing and active fraudulent concealment and denial of the facts alleged herein through the time period relevant to this action.

17. Monsanto was under a continuous duty to disclose to the Federal Government, consumers, users, and other persons coming into contact with its products, including Douglass Smelley, by accurately warning of the risks, disclosing safety information concerning its products and the risks associated with the use of and/or exposure to Roundup and glyphosate.

18. Defendant knowingly, affirmatively, and actively concealed safety information concerning Roundup and glyphosate and the serious risks with the use of and/or exposure to its products.

19. Based on the foregoing, Monsanto is estopped from relying on any statutes of limitations in defense of this action.

**Count I: Strict Products Liability for Production Design and Defect**

20. Plaintiff, Douglass Smelley, re-alleges the preceding paragraphs as if fully set forth herein.

21. Plaintiff Smelley brings this strict liability claim against Defendant Monsanto for defective production, manufacturing, developing, marketing, distribution and design.

22. At all times relevant to this litigation, Defendant was in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting

Roundup products, which are defective and were brought to the market in an unreasonably dangerous condition with known risks, dangers when consumers, users and other persons coming into contact with the product, including Douglass Smelley, thereby placing Roundup products into the stream of commerce. These actions were under the ultimate control and supervision of Defendant, Monsanto. As result of these reckless actions, Plaintiff used the defective product to his detriment for decades.

23. At all times relevant to this litigation, Defendant's Roundup(R) products were manufactured, designed and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, Douglass Smelley who is domiciled in Alabama.

24. Therefore, at all times relevant to this litigation, Defendant Monsanto's Roundup products, as researched, tested, developed, designed, licenses, manufactured, packaged, labeled, distributed, sold, and marketed by Defendant, were defective in design and formulation, in one or more of the following ways:

    a. When placed in the stream of commerce, Defendant's Roundup products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer, like Plaintiff Douglass Smelley, would expect.

    b. When placed in the stream of commerce, Defendant's Roundup products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illness when used by users in a reasonably anticipated manner.

    c. When placed in the stream of commerce, Defendant's Roundup products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner by users.

d. Defendant Monsanto did not sufficiently test, investigate, or study its Roundup products and, specifically, the active ingredient glyphosate.

e. Exposure to Roundup and the glyphosate containing products presents a risk of harmful side effects to users that outweighs a potential utility stemming from the use of the herbicide.

f. Defendant knew or should have known at the time of marketing its Roundup products that exposure to Roundup and specifically, its active ingredient glyphosate, could result in cancer and other severe illness and injuries.

g. Defendant did not conduct adequate post-marketing surveillance of its Roundup products.

h. Defendant could have employed safer alternative designs and formulations but failed to do so. Monsanto knew or should have known Roundup posed a risk to the public but failed to "warn" of the known risk.

25. At all times relevant to this litigation, Douglass Smelley used and/or was exposed to the use of Defendant's Roundup products in an intended and reasonably foreseeable manner without knowledge of its dangerous characteristics.

26. The harm caused by Defendant's Roundup products far outweighed their benefit, rendering Defendant's products dangerous to an extent beyond that which an ordinary consumer would contemplate. Defendant's Roundup products were and are more dangerous than alternative products and Defendant could have designed its Roundup products to make them less dangerous. At the time that Defendant designed its Roundup products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

27. The defects in Defendant's Roundup products were substantial and contributing factors in causing Douglass Smelley grave injuries, and if not for Defendant's misconduct and omissions, plaintiff would not have sustained his injuries.

28. As a direct and proximate result of Defendant placing its defective Roundup products into the stream of commerce, Douglass Smelley developed NHL and suffered grave injuries that are permanent in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as economic hardship, including considerable financial expenses for medical care and treatment.

29. WHEREFORE, Plaintiff respectfully request that this Court enter judgment in his favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other costs and further relief as this Court deems just and proper in an amount in excess of $4,000,000.00.

### Count II Strict Products Liability Failure to Warn

30. Plaintiff, Douglass Smelley, re-alleges the preceding paragraphs as if fully set forth herein.

31. Plaintiff brings this strict liability claim against Defendant for failure to warn.

32. Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Roundup products, and in the course of same, directly advertised or marketed the products to consumers and end users, including Douglass Smelley, and Defendant therefore had a duty to warn of the risks associated with the reasonably foreseeable uses (and misuses) of Roundup and glyphosate containing products and a duty to instruct on the proper, safe use of these products.

33. At all times relevant to this litigation, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure that its Roundup products did not cause users and consumers to suffer from unreasonably and dangerous risks. Defendant had a continuing duty to instruct on the proper, safe use of these products. Defendant, as manufacturer, seller, or distributor of chemical herbicides, is held to the knowledge of an expert in the field.

34. At the time of manufacture, Defendant could have provided warnings or instructions regarding the full and complete risks of Roundup and glyphosate containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to these products.

35. At all times relevant to this litigation, Defendant failed to minimize the dangers to users and consumers of its Roundup products and to those who would foreseeably use or be harmed by Defendant's herbicides, including Douglass Smelley.

36. Despite the fact that Defendant knew or should have known that Roundup(R) products posed a grave risk of harm, it failed to warn of the dangerous risks associated with their use and exposure. The dangerous propensities of its products and the carcinogenic characteristics of glyphosate, as described above, were known to Defendant, or scientifically knowable to Defendant through appropriate research and testing by known methods, at the time it distributed, supplied, or sold the product and not known to end users and consumers, such as Douglass Smelley.

37. At all times relevant to this litigation, Douglass Smelley used and/or was exposed to the use of Defendant's Roundup(R) products in their intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

38. Douglass Smelley could not have reasonably discovered the defects and risk associated with Roundup(R) or glyphosate-containing products before or at the time of his exposure. Mr. Smelley relied upon the skill, superior knowledge, and judgment of Defendant.

39. Defendant, as the manufacturer and/or distributor of Roundup(R), is held to the level of knowledge of an expert in the field.

40. Defendant knew or should have known that the minimal warnings disseminated with its Roundup(R) products were inadequate, but it failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses, including agricultural and horticultural applications.

41. To this day, Defendant has failed to adequately and accurately warn of the true risks of Douglass Smelley's injuries associated with the use of and exposure to Roundup(R) and its active ingredient glyphosate, a probable carcinogen.

42. As a result of their inadequate warnings, Defendant's Roundup(R) products were defective and unreasonably dangerous when they left the possession and/or control of Defendant, were distributed by Defendant, and used by Douglass Smelley.

43. Had Defendant provided adequate warnings and instructions and properly disclosed and disseminated the risk associated with its Roundup(R) products, Douglass Smelley could

have avoided the risk of developing injuries as alleged herein and Mr. Smelley could have obtained alternative forms of weed control.

44. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor for compensatory together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper in an amount in excess of $4,000,000.00 and punitive damages in excess of $12,000,000.00. Plaintiff demands a jury trial on the issues contained herein.

**Count III Negligence (Alabama Manufacturers Extended Liability Doctrine)**

45. Plaintiff, Douglass Smelley re-alleges the preceding paragraphs as if fully set forth herein.

46. Defendant, directly or indirectly, caused Roundup(R) products to be sold, distributed, packaged, labeled, marketed, and/or promoted. Defendant, directly or indirectly, caused Roundup(R) products to be purchased and/or used by Plaintiff Douglass Smelley.

47. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of its Roundup(R) products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers, users, and other persons coming into contact with the product.

48. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the marketing, advertising, and sale of its Roundup(R) products. Defendant's duty of care owed to consumer and the general public included providing accurate, true, and correct information concerning the risks of using Roundup(R) and appropriate, complete, and

accurate warnings concerning the potential adverse effects of exposure to Roundup(R) and, in particular, its active ingredient glyphosate.

49. At all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup(R) and specifically, the carcinogenic properties of the chemical glyphosate, and should have known that use or exposure to its Roundup(R) products could cause Douglass Smelley's injuries and thus, created a dangerous and unreasonable risk of injury to the users of these products, including Mr. Smelley.

50. Defendant knew or, in the exercise of reasonable care, should have known that Roundup(R) is more toxic than glyphosate alone and that safety studies on Roundup(R), Roundup's adjuvants and "inert" ingredients, and/or the surfactant POEA were necessary to protect Douglass Smelley from Roundup(R).

51. As such, Defendant breached its duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup(R) products, in that Defendant manufactured and produced defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in its products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

52. Defendant failed to appropriately and adequately test Roundup(R), Roundup(R) adjuvants and "inert" ingredients, and/or the surfactant POEA to protect Douglass Smelley from Roundup(R).

53. Despite the ability and means to investigate, study, and test its products and to provide adequate warnings, Defendant has failed to do so. Indeed, Defendant has wrongfully concealed information and has further made false and/or misleading statements concerning the safety and/or exposure to Roundup(R) and glyphosate.

54. Defendant's negligence included:

a.Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing its Roundup(R) products without thorough and adequate pre- and post-market testing.

b.Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup(R) while negligently and/or intentionally concealing and failing to disclose the results of trials, tests and studies of exposure to glyphosate, and, consequently, the risk of serious harm associated with human use of and exposure to Roundup(R).

c.Failing to undertake sufficient [*81]  studies and conduct necessary tests to determine whether or not Roundup(R) products and glyphosate containing products were safe for their intended use in agriculture, horticulture, and at-home use;

d.Failing to undertake sufficient studies and conduct necessary tests to determine the safety of "inert" ingredients and/or adjuvants contained within Roundup(R), and the propensity of these ingredients to render Roundup(R) toxic, increase the toxicity of Roundup(R), whether these ingredients are carcinogenic, magnify the carcinogenic properties of Roundup(R), and whether or not "inert" ingredients and/or adjuvants were safe for use;

e.Failing to use reasonable and prudent care in the design, research, manufacture, formulation, and development of Roundup(R) products so as to avoid the risk of serious harm associated with the prevalent use of Roundup(R)/glyphosate as a herbicide;

f. Failing to design and manufacture Roundup(R) products so as to ensure they were at least as safe and effective as other herbicides on the market;

g. Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Defendant could reasonably foresee would use and/or be exposed to its Roundup(R) products;

h. Failing to disclose to Douglass Smelley, users, consumers, and the general public that the use of and exposure to Roundup(R) presented severe risks of cancer and other grave illnesses;

i. Failing to warn Douglass Smelleu, users, consumers, and the general public that the products' risk of harm was unreasonable and that there were safer and effective alternative herbicides available to Mr. Smelley and other users or consumers;

j. Systemically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup(R) and glyphosate-containing products;

k. Representing that its Roundup(R) products were safe for their intended use when in fact, Defendant knew or should have known that the products were not safe for their intended use;

l. Declining to make or propose any changes to Roundup(R) products' labeling or other promotional materials that would alert the consumers and the general public of the risk of Roundup(R) and glyphosate.

m. Advertising, marketing, and recommending the use of Roundup(R) products, whole concealing and failing to disclose or warn of the dangers known by defendant to be associated with or caused by the use of and exposure to Roundup(R) and glyphosate;

n. Continuing to disseminate information to its consumers, which indicate or imply that Defendant's Roundup(R) products are not unsafe for use in the agricultural, horticultural industries, and/or home use; and

o. Continuing the manufacture and sale of its products with the knowledge that the products were unreasonably unsafe and dangerous.

55. Defendant knew or should have known that it was foreseeable that consumers and/or users, such as Douglass Smelley, would suffer injuries as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale from Roundup(R).

56. Douglass Smelley did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup(R) or its active ingredient glyphosate.

57. Defendant's negligence was the proximate cause of the injuries, harm, and economic losses that Douglass Smelley suffered, as described herein.

58. As a proximate result of Defendant's wrongful acts and omission in placing its defective Roundup(R) products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, Douglass Smelley developed NHL and suffered grave injuries causing a reduced life expectancy, that are permanent in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as

economic hardship, including considerable financial expenses for medical care and treatment.

59. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor for compensatory in excess of $4,000,000.00 and punitive damages in excess of $12,000,000.00 together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems proper and just. Plaintiff also demands a jury trial on the issues contained herein.

**Count IV Breach of Express Warranty**

60. Plaintiff Douglass Smelley re-alleges the preceding paragraphs as if fully set forth herein.

61. At all times relevant to this litigation, Defendant engaged in the business of testing, developing, designing manufacturing, marketing, selling, distributing, and promoting its Roundup(R) products, which are defective and unreasonably dangerous to consumers, including Russell Smelley, thereby placing Roundup(R) products into the stream of commerce. These actions were under the ultimate control and supervision of Defendant, and their Roundup(R) products were expected to, and did, reach Douglass Smelley without any substantial change in their condition.

62. Defendant expressly represented and warranted to the purchasers of its Roundup(R) products, by and through statements made by Defendant in labels, publications, package insert, and other written materials intended to consumers and the general public, that its Roundup(R) products were safe to human health and the environment, effective, fit, and proper for their intended use. Defendant advertised, labeled, marketed, and promoted Roundup(R) products, representing the quality to consumers and the public in such a way

as to induce their purchase or use, thereby making an express warranty that its Roundup(R) products would conform to the representations.

63. These express representations included incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to Roundup(R) and glyphosate. Defendant knew or should have known that the risks expressly included in Roundup(R) warnings and labels did not and do not accurately and adequately set forth the risks of developing the serious injuries complained of herein. Nevertheless, Defendant expressly represented that its Roundup(R) products were safe and effective, that they were safe and effective for use by individuals such as Jerald Carriere, and/or that they were safe and effective as agricultural herbicides.

64. The representations about Roundup(R), as set forth herein, contained or constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, creating an express warranty that the goods would conform to the representations.

65.  Defendant placed its Roundup(R) products into the stream of commerce for sale and recommended their use to consumers and the public without adequately warning of the true risks of developing the injuries associated with the use of and exposure to Roundup(R) and its active ingredient glyphosate.

66. Defendant breached these warranties because, among other things, its Roundup(R) products were defective, dangerous, unfit for use, did not contain labels representing the true and adequate nature of the risk associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically Defendant breached the warranties in the following ways:

67. Defendant represented through its labeling, advertising, and marketing materials that its Roundup(R) products were safe, and fraudulently withheld and concealed information about the risks of serious injury associated with use of and/or exposure to Roundup(R) and glyphosate by expressly limiting the risks associated with use and/or exposure within its warnings and labels; and Defendant represented that its Roundup(R) products were safe for use and fraudulently concealed information that demonstrated that glyphosate, the active ingredient in Roundup(R), had carcinogenic properties, and that its Roundup(R) products, therefore, were not safer than alternatives available on the market.

68. Defendant has sole access to material facts concerning the nature of risks associated with its Roundup(R) products as expressly stated within its warnings and labels, and Defendant knew that consumers and users such as Douglass Smelley could not have reasonably discovered that the risks expressly included in Roundup(R) warnings and labels were inadequate and inaccurate.

69. Plaintiff Smelley had no knowledge of the falsity or incompleteness of Defendant's statements and representations concerning Roundup(R), and he relied to his detriment on these statements and representations.

70.  Plaintiff Smelley used and/or was exposed to the use of Roundup(R) as researched, developed, designed, tested, formulated, manufactured, inspected, labeled, distributed, packaged, marketed, promoted, sold, or otherwise released into the stream of commerce by Defendant.

71. Had the warning and labels for Roundup(R) products accurately and adequately set forth the true risks associated with the use of such products, including Douglass Smelley's injuries, rather than expressly excluding such information and warranting that the

products were safe for their intended use, Mr. Smelley could have avoided the injuries complained of herein.

72.  As a direct and proximate result of Defendant's wrongful acts and omissions, Douglass Smelley suffered severe injuries. Mr. Smelley developed NHL and suffered grave injuries that are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as economic hardship, including considerable financial expenses for medical care and treatment.

73. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor for compensatory in excess of $4,000,000.00 and punitive damages in excess of $12,000,000.00 together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems proper and just. Plaintiff also demands a jury trial on the issues contained herein.

### Count V Breach of Implied Warranties

74. Plaintiff Douglass Smelley re-alleges the preceding paragraphs as if fully set forth herein.

75.  Before the time that Douglass Smelley was exposed to the use of the aforementioned Roundup(R) products, Defendant impliedly warranted to its consumers and users, including Mr. Smelley, that its Roundup(R) products were of merchantable quality and safe and fit for the use for which they were intended; specifically, as horticultural herbicides.

76.  Defendant, however, failed to disclose that Roundup has dangerous propensities when used as intended and that the use of and/or exposure to Roundup(R) and glyphosate-containing products carries an increased risk of developing severe injuries, including Douglass Smelley's injuries.

77. Plaintiff Smelley reasonably relied upon the skill, superior knowledge, and judgment of Defendant and upon its implied warranties that the Roundup(R) products were of merchantable quality and for their intended purpose or use.

78. Roundup(R) products were expected to reach and did in fact reach consumers and users in the stream of commerce, including Douglass Smelley, without substantial change in the condition in which they were manufactured and sold by Defendant.

79. Defendant intended that its Roundup(R) products be used in the manner in which Douglass Smelley in fact used them and Defendant impliedly warranted each product to be of merchantable quality, safe, and fit for this use, despite the fact that Roundup(R) was not adequately tested or researched.

80. In reliance upon Defendant's implied warranty, Douglass Smelley used Roundup(R) as instructed and labeled and in the foreseeable manner intended, recommended promoted, and marketed by Defendant.

81. Douglass Smelley could not have reasonably discovered or known of the risk of serious injury associated with Roundup(R) or glyphosate.

82. Defendant breached its implied warranty to Douglass Smelley in that its Roundup(R) products were not of merchantable quality, safe, or fit for their intended use, or adequately tested. Roundup(R) has dangerous propensities when used as intended and can cause serious injuries, including those injuries complained of herein.

83. The harm caused by Defendant's Roundup(R) products far outweighed their benefit, rending the products more dangerous than an ordinary customer or user would expect and more dangerous than alternative products.

84.  As a direct and proximate result of Defendant's wrongful acts and omissions Douglass Smelley suffered severe physical and emotional injuries. Mr. Smelley developed NHL and suffered grave injuries that are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as economic hardship, including considerable financial expenses for medical care and treatment.

85. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor for compensatory in excess of $4,000,000.00 and punitive damages in excess of $12,000,000.00 together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems proper and just. Plaintiff also demands a jury trial on the issues contained herein.

### Prayer for Relief

86. WHEREFORE, Plaintiff Douglass Smelley respectfully requests that this Court enter judgment in his favor and against Monsanto, awarding as follows:

87. Compensatory damages in the form of medical expenses, out-of-pocket expenses, lost earnings, and other economic damages in an amount to be proven at trial;

88. Compensatory damages for pain and suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial;

89. Punitive and/or exemplary damages for the wanton, willful, fraudulent, and reckless acts of the Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendant and deter future similar conduct, to the extent allowable by applicable law in an amount of $12,000,000.00.

90. Pre- and post-judgment interest;

91. Costs including attorneys' fees, court costs, and other litigation expenses; and

92. Any other equitable relief that this Court may deem just and proper.

/s/ Gene T. Moore (MOO 068)<br>
Gene T. Moore, Attorney for the Plaintiff

Gene T. Moore, Attorney at Law, P.C.
1802 15th Street
Tuscaloosa, Alabama 35401
Telephone: (205) 349-5413
Facsimile:   (205) 349-2512
gtmlaw@bellsouth.net

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing by AlaCourt e-file and email addressed to the attorney(s) of record for the parties:

All Counsel of Record for Monsanto and the MDL Plaintiffs

Monsanto Company
800 N. Lindbergh Blvd.
Saint Louis, MO 63167

Dated this the 26th day of August, 2019.

/s/Gene T. Moore<br>
<br>
Eugene Terry Moore<br>
<br>
Alabama State Bar I.D. #  7999 E47 E